Good morning, Your Honor. Good morning. Raymond Dionne appearing on behalf of the appellant, Mark Feldman. I would like to address a number of issues this morning, or this afternoon, beginning with the burden of proof and the standard of review in this matter. Both the tax court and the IRS in its appeals memorandum stated that the burden of proof in this case was on the appellant, Mark Feldman. I have submitted in my briefs arguments with respect to 26 U.S.C. 7491, where the burden of proof shifts to the IRS after credible evidence has been presented in a proceeding. Well, shifts for what kind of proceeding? I believe it would shift for proceedings such as this, Your Honor, a request for relief under the innocent spouse statute. Relevant to ascertaining the liability of the taxpayer for any tax imposed. But isn't that presumed here, because you're now seeking a discretionary forgiveness or abatement of some kind by the Commissioner, not a determination of whether the tax was owed in the first place? Excuse me, it's a given the tax was owed. Absolutely, Your Honor. It is a given that the tax was owed. So suddenly, if you're seeking equitable relief that's discretionary to the Commissioner or to the Secretary of the Treasury, I'm not sure how this statute, with regard to the burden of proof when you're proving up tax liability in the first place, how this section speaks to what we're facing today. Well, I don't think the statute actually limits it. This is discretionary. It's equitable by the – it says Secretary, so I'll keep saying Secretary. So it's not the situation where you're litigating over whether there's liability in the first place. But the statute doesn't limit itself to liability. Clearly, it could have if he had chosen. But that is relevant to ascertaining the liability of the taxpayer. That's exactly what 7491 says. That's the general rule. Your Honor, I would – I would submit that that is – that is to be read broadly. That not just – because the situation of – Okay. Let's move away from the statute then. The context here, it seems to me it's difficult to take a rule which Congress inserted to give the taxpayer a break, to insert that into still another provision inserted by Congress potentially to give a taxpayer a break, specifically assigning discretionary relief for equitable grounds to the Secretary. And if something's committed to an administrator's discretion, how is it this burden of proof can get shifted back to the Secretary to decide not to exercise his discretion? I just want to disconnect there. Again, we are talking about the level of evidence that's being submitted. Clearly, the burden of proof starts with the taxpayer, okay? And he has to produce credible evidence on these equitable issues. Well, let's switch over to the other statute then, because this may be where we need to go, the statute that provides for equitable relief under procedures prescribed by the Secretary if, and then the end of it, and this is the key part for me, the Secretary may relieve such individual of such liability. If the decision is committed to the Secretary, I don't see how the burden of proof can also be committed to the Secretary. Well, the discretion is not absolute, Your Honor. The discretion is one that must be exercised appropriately. Well, for absolute, you couldn't be here, so I'll agree with that. But the notion that this, that the 7491 burden of proof applies to this kind of discretionary decision is one I have hard, I have a hard time tracing through. It just doesn't seem consistent with this statute. Well, and perhaps I can address that. Clearly, there is, the taxpayer has to produce credible evidence. And the standard prior to this, by the way, is preponderance of the evidence. So, in effect, the taxpayer, if you were not to apply this to the taxpayer in this situation, would simply have to produce prior preponderance of the evidence. I think what the intent of the statute was to shift more of the onus on the IRS. This, in effect, was enacted. This burden of proof statute was enacted at the same time as the innocent spouse statute was enacted. They were one parcel of the same statute. I think what they were trying to do there, and there's congressional hearings on this, as far as all of the abuses that have been undertaken with respect to individuals who were seeking this kind of relief, Congress was attempting to, in effect, shift a little bit of this onus back to the IRS. Not entirely. Clearly, the taxpayer has to come forward first and produce credible evidence that he is entitled to some kind of relief. And we would submit that we've done that in this case, Your Honor. Then the burden must shift back to the IRS to, in effect, show by a preponderance of the evidence that its discretion was properly exercised. And that's not a high standard for the IRS, to me, but it certainly puts the onus back on the IRS to show the discretion standard. Because you're basically treating this as an adjudication where you have to show by a preponderance of the evidence, and the burden shifted to the service to disprove by a preponderance of the evidence. But if it's a discretionary decision in the first place, it seems like you've flushed the discretion out of it. What's the standard the Secretary is supposed to apply or should be held to? I think the standard is one of is there credible evidence that has been demonstrated in effect, is there a preponderance of the evidence that favors the taxpayer or the word may out of the equitable relief provision? No, I don't believe so, Your Honor. Again, this is not an unfettered discretion on the part of the IRS. But you're acting like there's nothing in between. If it said the Secretary will relieve such individual of such liability, then I think you might have something. But if it says the Secretary may, to say may suggests that even if these things are proven, the Secretary doesn't have to, but to apply the adjudication system that you've discussed, the Secretary would have to, and not only that, would have to bear the burden of proof if the taxpayer came forward with some level of credible evidence to begin with. Well, again, I think that the taxpayer originally has to produce credible evidence that it's equitable for him to be relieved of this obligation. In effect, he has to come forward first with the standard of the burden of proof. Why do you say he can stop there? Because once he has produced credible evidence and the IRS wants to dispute that, they must then come forward and bear that additional burden to show that they are, by preponderance of the evidence, exercising their discretion appropriately. I know that's a question. I know your position. I have to confess. I'm not persuaded. So what is it doing now? I'm sorry, Your Honor. What is Feldman doing now? Mr. Feldman is still working as a lawyer. Mr. Feldman rents. And again, this can go to some of the other issues, I guess. The standards that the IRS applied in the situation, the economic hardship attribution and the third one was new or should have known. And each one of those I'd like to address. What's the total liability? The total liability, I think, at this point is close to 500,000, Your Honor. And I think that's a good segue into the economic hardship. And what's Mrs. Feldman's? The former ex-wife? Yes. She declared bankruptcy shortly after entering into the marriage dissolution judgment. So she has, in effect, discharged her obligations. Under the judgment, she was responsible for at least half of this obligation pursuant to that marriage dissolution agreement, and then she immediately went into bankruptcy and discharged that obligation, which in effect shifts it back to my client. So the legal liability originally was with her, recognizing her improprieties in this situation. And it's now shifted back to my client. And it kind of goes into the economic hardship. Here's a gentleman who makes at the time he made $130,000. He testified to that. The trial. At the time of what he made $130,000? $130,000. At how much time? At the time that the tax court proceedings were ongoing, that was in 2003. Okay. Not the time he incurred the tax liability. No. When he incurred the tax liability, his income actually dropped off substantially. There was a loss of a major client. And for a period of time, he was making substantially less than $130,000. But at the time of the tax proceedings, he testified that he was making $130,000. $137,000 of that is earmarked towards child care, child support. He pays almost $40,000 in taxes. He's self-employed. He pays the postage and Social Security, et cetera. It leaves his disposable income somewhere around $45,000, $48,000. Simple mathematics would tell you that the economic hardship existed in this case. Somebody who makes $48,000 in L.A. can barely afford to maintain a standard of living that is modest. You add to that a $500,000 tax liability with a 5% interest, you can see that he could barely pay the interest on that tax liability, let alone pay the principal. And that evidence was submitted to the court. That evidence was submitted to the IRS. There are no assets, Your Honor. He lost everything. He lost his home. He sold the home. The proceeds from that home went to the IRS. Any extra money that he has made over the last eight or nine years has gone to the IRS, more or less, at least up until the time of the tax court proceedings. He paid extra money when he could. Here's a man who is not trying to avoid something. He's simply saying, I can't afford to do this. I'm looking for some help. And that's appropriate. And that's, I think, what this statute is designed to protect. The congressional intent to this statute, and we thought — Can he work out a payment plan with the IRS? Would they do that? At the time of this tax proceeding, that was simply not possible. First of all, he did pay everything that he could. If he had extra money, he would pay it to the IRS. The record will reflect that he made extra payments to the IRS in 1998, 1999. I think in 2000 he sold his house. He made all those payments to the IRS. He paid and was not trying to avoid payment. He was looking for relief. But when he got money, he paid it. But at the time of the tax court proceedings, disposable income was basically $200 to $300 a month, maybe a little bit more. How do you pay a $500,000 tax liability with disposable income that's less than $1,000 a month? He thought about bankruptcy. Bankruptcy has its own problems, Your Honor. Here's a man who's trying to build a practice. He has partners. That impacts them as well. And he's a man who is very conscientious about what he does and how he does it. He's the rainmaker in the business. If he declared bankruptcy, the effect of that would be to terminate, in effect, the partnership and affect all of his friends. It would certainly affect the attorneys who work for him. It would affect me. Why? Why? Bankruptcy proceeding, an individual partner, that's going to require the sale of his asset, his ownership interest in that partnership. He's the rainmaker. He's the one who brings in the business. The loss of that individual would probably spell the death of the firm. So, yes, it has substantial impact. And here's not a man — here's a man who doesn't want to declare bankruptcy. It's not as though he didn't, and this is not part of the record, but there was certainly offers in compromise in this case, Your Honor. Those were rejected. They were substantial. They weren't $500,000, but they were substantial. They were rejected by the IRS. The IRS wants it all. They want the entire $500,000, and they want to accumulate the interest, and they want to have payments on the interest. And that's just not possible. He doesn't have it. He didn't have it then. And this was the relief he saw. The IRS has national standards for — and I referenced that in my brief as well. National standards for standard of living in various parts of the country. And in Los Angeles, the standard of living, according to the IRS and the amount of money he makes, would be between $45,000 and $48,000. That's what the IRS would look at and say, you're entitled to set that money aside to meet your basic living expenses. That's their national standard. So on this issue here, you have to go, if you don't make it with the IRS, then you have to go to tax court? I'm not sure I understand the question, Your Honor. Well, how did you get to the tax court? Well, we submitted a request for innocent spouse relief with the IRS directly. I see. That was then appealed to the IRS appellate department. Both were rejected. It was then taken to the tax court, appealed to the tax court, and the tax court basically reviewed that. There and then, of course, we are here today. Throughout these — How about our mediation service? You know, we have that. Do you know about that? Your Honor, I'd be happy to mediate this matter. I truly would. It's not as though Mr. Feldman wants to completely avoid this obligation. He just doesn't want to be — he doesn't want to be tied down with it. This was the avenue to seek relief. And certainly mediation, if the — we offered to fly to Washington, D.C., to sit down with the IRS and see if we could negotiate a settlement in this case, negotiate something that would work. But if they're looking for $30,000 or $40,000 or $50,000 a year in interest payments and then principal payments on top of that, and the man doesn't make it, there's no way we can negotiate that. You can't pay that. How old is he? Mr. Feldman's close to my age, about 50. He's a young man, I suspect. He's going to practice for the next 10 or 15 years. There raises another interesting question, Your Honor, one that I'm a little bit puzzled by, and that is the IRS or the tax court took the position that Mr. Feldman was an attorney, and therefore, it was inappropriate to grant relief in this case. And I submit, Your Honor, that the determination is made at the time you request relief, not what's going to happen 10 years or 15 years or 20 years from now. Mr. Feldman may not be the rainmaker that he is today. We may close the business. I have seen attorneys go from the top to the bottom and back up to the top again.  We're dealing with the present. We were dealing with the present back then and what his situation was. And I think that's when the analysis needs to be made. What was his status at the time that he made this request? Are you part of the law firm? I'm sorry? Are you part of the law firm? I am, Your Honor. I am an attorney partner at the firm. I think the analysis has to be, what was his status at the time that he made the request for relief? Well, to the extent that economic hardship is a factor to be considered, how is it that somebody's income potential isn't appropriately part of the mix? Well, how do you determine income potential? I have worked with other partners in the past. I worked with a gentleman who was at the top of the ladder, Chad Borden Parks, the excellent lawyer. And one day I walked into the office. He was on the couch and he never practiced a day of law again. How do you determine what the income potential of an attorney is? Well, one thing that you could do is look at past experience. And at $16,000 a week in partnership draw, that looked like pretty good money to the IRS. And for two years, that was a very good draw. Prior to that, he probably made less than, well, he did make less than $100,000 a year. And after that, he made substantially less than that for a period of time. And his income since then has not been extraordinary. It's been in the low hundreds, $130,000, $140,000. So it's not as though we're talking about a Melvin E. Meyer type income, $500,000, $600,000, $700,000, $800,000. He made that for a couple of years. And he should have enjoyed the benefits of that, but he didn't. His spouse, there's no dispute of that, his spouse took that money, misappropriated it, mishandled it. I don't know where it is. It could be in an account in her personal name. I don't know. But at the end of the day, he didn't receive the benefit of it. But he is receiving the detriment of her conduct, and he's seeking relief under this statute because of that. It's not as though he doesn't want to pay. He'll pay, but he just can't afford it. Very good, Your Honor. Why can't the IRS work out a deal with this man? I think the service would love to have a reasonable conclusion to this case. Unfortunately, I mean, I'm not at liberty to discuss settlement negotiations here, but I'll note that a problem that the service faced in the tax court and in the initial discussion was that taxpayer never brought evidence to show what his financial condition was, what his actual bills and payments were like, or what his documentary evidence. He's basically just saying, take my word for it. I only make this much amount of money, and these are my bills. And I think if we've learned anything from this record, it's that you can't take somebody's word for it when it comes to assessing their financial situation. And I think on the economic hardship, that's what it's boiled down to is a failure of proof. Taxpayer has a burden of proof to show economic hardship, and he just didn't bring any bills, any bank statements. And the government is unwilling to, was unwilling originally and before the tax court, unwilling to say, well, we'll take your word for it. What about that? You don't want to show the government his records and what he earns and what he has? Absolutely not. As a matter of fact, we have the excerpts of record here. The Exhibit 2, Exhibit 4, Stipulations of Fact, submitted to the tax court. Attached to those stipulated facts are tax returns. It's his judgment in bankruptcy in his marriage in the family law court, spirit court, a judgment basically with the settlement agreement, i.e. the findings of that court. Well, how about his earnings records? All of his earnings records have been available to these gentlemen. The IRS, I personally submitted to the IRS substantial records with respect to our request to meet with us and sit down and discuss settlement with us. We wanted to, and we in fact submitted all of his tax returns for the last 10 years. Well, the tax court did fault you here. I'm looking at page 11 of the decision that you did not provide bill statements or other evidence to corroborate his testimony. And I see that, Your Honor, and I'm prepared to address that. Failed to show that his decisions regarding economic hardship was an abuse of discretion? Exhibit 2, Your Honor, attached to the stipulation of facts, which was submitted to the tax court, signed off by both the IRS and my client. Paragraph, I apologize. I mean, you made such an appealing argument, I was just ready to reach into my wallet. Well, his, and I'll find it in a second, but the judgment in the family law court, which has a detailed statement of his assets, his liabilities, the distribution of marital property, all of which was signed off by the superior court, all of that was stipulated as part of the evidence for the tax court to consider. Mr. Felton testified as to all of that. He even testified at trial, as you might believe. He testified he had no assets, he had no real property, he had no stocks, and it went on and on. All that testimony is there. In fact, the tax court ignored all of it. It said it doesn't exist. You're just quoting the relevant provisions of the decision. Again, the tax court has faulted him, said he provided only his own testimony in response to leading questions from his counsel as to certain of his monthly expenses. He generally did not provide the bill. He did not provide financial information for his current spouse. It's unclear whether his outlays are reasonable living expenses or simply debts for his prior lifestyle. We have a number of points, then, on which the tax court faulted you. And I appreciate that, Your Honor, and that is a problem of the tax court decision. I have the original file judgment in the superior court. Can you point us in the record where he provided information about his current spouse? About his current spouse. Do you have information in the record that you can show us where he provided bills, statements, or other evidence to corroborate his testimony? Those are the specific things the tax court found. Number 92 of the excerpts of records through page 111 contains a very detailed statement of Mr. Feldman's financial record. What about his current spouse? What did she do? Her spouse does not work. She goes to school, hopes to be employed sometime in the future. What? Hopes to be employed sometime in the future, but she does not work. He has three children. She cares for them. It's a shared situation that she cares for them, but she goes to school and does not work. There's no income there. There's no hiding of any income there. There is no hiding of assets. There is no unwillingness to disclose everything to the IRS. Why don't you get Mr. Feldman and his spouse and bring all your records and have supplemental proceedings or let them take your client's deposition under oath? If I may, Your Honor, even after this proceeding is over, anyone who's in collection with the IRS is always able to negotiate with them a collectability settlement. And that can be done even after these proceedings are over. In fact, that can be done even if these proceedings had never been brought. But the judgment of this Court, if it were adverse to my client, would be the hammer over my client's head so that the IRS could proceed irrespective of proceedings. Well, you want to try to settle it now. I would be happy at any time, at any place in this country, to fly there and meet with the appropriate IRS officials to try and negotiate a resolution of this case. We offer that. We offer to fly to Washington, D.C. at any time they require to bring all the records that we have to sit down with them and discuss a resolution. Well, why don't we, you know, we have a mediation service in San Francisco. You know about that? The government is happy to come to a reasonable settlement. But the problem is not a question of whether or not someone will fly and talk to the government. It's a question of getting a reasonable offer and also getting proof of a taxpayer's financial situation. You know. You could do that with a mediator. Look, I'm trying to help you out. You'll owe the money, you see. I agree with you. You'll owe the money. I pay the government every dime I ever own it more. So, you know, you've got $500,000 and some validity to what Judge Bybee says. He's got earning power. You know, the offering to sit down and talk to you. I have made that offering. Invitement? No, no. I'm prepared to do it. You have to bring everything. I would submit that we adjourn this back and we do that and we mediate if that's possible. I'm prepared to do that. Your Honor, given the experience we've had in prior settlement negotiations, I don't know if the parties are in agreement about what is a reasonable offer. And I think the government would prefer to have this issue settled by the court, and the taxpayer can then continue to negotiate with the IRS about whether or not this is actually collectible. You say have this resolved. You mean the question as to whether or not he's entitled to an innocent spouse? Correct. If I may say something about his income potential, in excerpts of record on pages 301 and 02, he mentions that he earned $100,000 of what he called phantom income, in addition to the $130,000 he was actually paid. What this meant was that the firm paid off $100,000 worth of debt on behalf of Mr. Feldman as a partner in the firm. Now, he said the firm had an additional $700,000 debt. Now, I think this is even math that lawyers can do, but if you have a $700,000 debt, four partners, and they're getting $100,000 paid off for each of them each year, the debt would be gone in two years or less than two years. And then as I do the math, his income would then go up to $230,000 again pretty quickly. I think based on the record in this court, he has a very high income potential. This is someone who has earned as much as $18,000 a week. And I think that the record shows that the firm, although it had hard times immediately in the aftermath of this, it improved to the fact that to the point where they could pay him $100,000 and pay off $100,000 of debt per partner. And that's a substantial income potential. I think also to correct a few things I think that were represented to the court, taxpayer did not sell his house. The IRS sold his house to pay his tax liabilities. And additionally, a lot of the other payments that taxpayers have been making to the IRS were not for the years at issue here but were for subsequent tax years in which he also fell in arrears. And that's in the record stipulated in pages 127 to 28 about his future tax years, making payments to try to get those up to speed. Okay. All right. That's it. Thanks. Thank you. Well, you know, you've used up your time. Well, we understand the argument. You know, we have a mediator. If the two of you want to go, all you've got to do, the clerk will give you the phone number, Mr. Lombardo is up in San Francisco, you can call, say, we want to mediate this. They'll send somebody down here. They have people down here. You know, I met one of the mediators here the other day. He's going to have to come clean. He's going to have to give them every little scrap of paper. They're not going to take his word for it. Your Honor, we've done that. We have done that. I don't know what you've done or haven't done. I'm just telling you what you need to do. And so we'll go ahead with this. And if the two of you want to mediate it, as far as I'm concerned, Mr. Garcia here will give you the name of our mediator. He'll even let you use our phone, so it won't cost you anything. And you can set up a session with him, and they'll come down here. But you're going to have to do what they want to do. I mean, it seems to me the IRS sounds, at least to this gentleman here, he sounds very reasonable. As a matter of fact, he's so reasonable, I wonder why he's even working for the IRS. I actually don't work for the IRS, Your Honor. Who do you work for? The Department of Justice. They handle the appellate process. Maybe you better be a public defender. Okay.
judges: Pregerson, Clifton, Bybee